The United States Supreme Court tells us two things that are important in this case. The first is that we are to assess jurisdictions in the context of the proceeding, which includes the evidence presented, the arguments of counsel, and the other instructions. The Court also tells us that when a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy. The problem in this case was that the instructions given to the jury on accomplifiability, the aiding and abetting instructions, proved to be very difficult for the jury to understand. That's not surprising because the concept is a difficult legal concept. And in reading through last night the 200 or so pages of discussion among the lawyers and the trial judge, when the jury kept coming back with difficulties on the instruction, one thing that was notable to me was that the Court and all four attorneys, the two prosecutors and the defense attorney, at various times indicated their own confusion about these instructions. At one point, the prosecutor said nobody would be able to understand these instructions, referring to the instructions that had been given to the jury in the first instance. What happened, though, was through a series of answers that the judge made to the jury, he first referred them back only to the instructions that the jury had already indicated it was not understanding. And when it later sought to clarify instructions, it did so by clarifying aid but leaving out the important element of specific intent. This proved critical in the case because there had been one or two prior attempts to kill the detective before Jenkins actually killed him on October 31st. What is clear from the jury's findings on both overt acts and special circumstances is that the jurors were not, did not unanimously find that Moss played a role in the October 31st murder. That is, the prosecution had argued to the jury that Moss was the other person present with Jenkins at the time that the detective was killed. And the jury pretty clearly rejected that theory. Now it's also clear that the jury did buy the prosecution's theory that on October 28th, when some people had went, some persons that Jenkins had asked to had gone out there in an attempt to kill Williams, that Moss was among those people. So it's clear that the jury found that Moss had actively participated in a conspiracy to kill the detective on or before October 28th and went out there on October 28th with the intent to participate in a killing at that time. The killing did not take place either because the conspirators, including Moss, did not see the detective or saw and didn't act upon it. The defense attorney had argued that he saw and didn't act upon it because there had been a series of pages to Moss that he was supposed to answer and he hadn't answered. But in any case, the jury found that he was out there. What happened between the 28th and the 31st, though, is pretty critical because the evidence shows that the initial conspiracy to kill the detective had to do with preventing his testimony at the robbery trial against Jenkins, that that was the purpose of the conspiracy, which is part of the reason he was so angry at Moss when Moss came back on the 28th and had not gone through with the attempt to kill the detective. The detective then testified on October 30th. That day Jenkins ran into a childhood friend in the courthouse and they ended up spending several hours together. And in the course of that conversation, Jenkins told him that the detective had set him up on a robbery that he did not commit and nobody was going to get away with that without him exacting the detective. Now, just so I get this straight, last case today, he was convicted of conspiracy and then the special circumstance, aiding and abetting, and then first-degree murder. And you're not challenging conspiracy? I'm not challenging the conspiracy because it's clear from the jury instructions that he did engage in a conspiracy to kill the detective at one point. What I'm challenging is the first-degree murder conviction and the special circumstances. The special circumstances cannot attach to conspiracy theory, so he wouldn't be liable for the same punishment if he were guilty only of a conspiracy and not of a first-degree murder with special circumstances. All right. But your – so your argument is that, okay, there was this conspiracy to kill the detective before he testified, but that conspiracy ended, and so it did not include as a foreseeable or probable consequence the aiding and abetting? That it didn't include as a foreseeable consequence that he would be killed in retaliation for his testimony. All right. Do you have any – is there any authority that because the motive said one member of the conspiracy maybe acts on a different motive for the conspiracy? Well, that's the State's argument. That motive has no relevance to any of this. But if you look at California law, it's clear that the purpose of a conspiracy is essential, because a conspiracy ends either when the purpose is fulfilled or when it is defeated. And then under California law, the purpose includes the motive. And so it's not an element of conspiracy, and I don't argue in any way that it is, but it is relevant for determining when a conspiracy ends. Is the purpose defeated? And that's the argument that I'm making, is that the evidence is susceptible to an interpretation that it appears the jury bought, that there were two separate conspiracies here, one to kill him to prevent his testimony and another to kill him in revenge for his testimony. Now, it's critical in terms of this that there was a special circumstance that was alleged in this case that a – that the detective was a witness who was killed in retaliation for his testimony. The jury found that not true as to Moss, which suggests that they didn't think he was involved in an effort to kill him in revenge for his testimony. It's also clear that Jenkins is the one who killed him and that Jenkins made it clear to that childhood friend who he ran into that he was killing him to exact his revenge for the officer testifying against him. Kennedy. Was there an instruction to the jury that the jury could find whether there were one or two conspiracies? No. Wouldn't that be a crucial element to your argument? Well, it would have been better if there had been. On the other hand, there – it's clear from the jury questions that that's exactly what they were doing, at least some of them were doing. None of the questions make it clear that they were unanimous on anything, but it's clear that at least some of them were having that very problem. They were told in their conspiracy instructions that a conspiracy ends when the purpose is either realized or defeated. And so it's – under the instructions given, it would not have been unreasonable for the jury to do what it appears clear that they were doing, which was drawing a distinction between what Moss had – they found Moss was involved in to prevent his testimony and what they found that Moss was not involved in, which was to avenge the fact that he testified. In other words, in your view of it, the – there was one conspiracy, but the conspiracy ended. So what does the jury do with the fact that there obviously was some sort of a conspiracy to ultimately kill him? Well, see, the problem with the State's theory about this is all one conspiracy and Moss is liable for anything as long as he engaged at some point in the conspiracy to kill the officer that he's – that he's liable for that at any time, regardless of the reason of the changes or anything. By that theory, if Jenkins hadn't killed him right then on the 31st and instead had been convicted as he was of the robbery, gone off and done his six or seven years on the robbery, got out and then killed the detective, Moss would still be liable, whether Moss had even seen Jenkins during the seven or eight years that he was in prison. Well, that would have a lot to do with what the conspiracy, in fact, was. That's my point, though. Yeah. Is that it – from the jury's finding on the special circumstance, it seems clear that they did not think that Moss was involved in any conspiracy to avenge the officer's testimony, which, of course, makes sense. Would you please excuse me? I'm sorry. I need to get some water. Please go ahead. I'm sorry. So what was the theory of the aid? What was the aid that Moss gave to Jenkins? And what was the evidence of aid? For the killing on the 31st? Right. The prosecutor argued one thing, and the court actually brought out another thing. What the prosecutor argued would have been aid, even though he may have had nothing to do with anything after the 28th, was that having gone out there on the 28th and on the 25th, which was the prosecutor's theory, it's kind of unclear whether the jury bought the argument about the 25th because there was an overt act having to do with the 25th that they just made no finding on at all. But in any case, the prosecutor's theory was that having gone out there and essentially scouted or surveilled the situation, because the actual killing on the 31st took place at the very same place and... And time, when he was, when the officer was picking up his child from school. Yes. Yes. And that that was the prosecutor's theory of aid. The court actually offered another theory of aid, which was there had been evidence that as to the 28th and also as to the 25th, that the weapon to be used in those, in the murder that was supposed to occur on those days, was provided to the person who was supposed to actually do it, a different person instead, by Moss. Now, it's not actually the weapon that is used on the 31st, but the court actually indicated, and I think it's the ER-104, the court actually indicated that that would be enough to be the aid that assisted. Now, what's interesting about that argument, the court doesn't say that to the jury. I don't mean to mislead the court. The court said it in the conversation, in the discussion about what they should tell the jury when they're having all this problem. The interesting part about that hypothetical, though, is that that's the very problem that the court's supplemental instructions would have led the jury into, because the jury could have found that assisting with a weapon at some point was sufficient aid, but it leaves open the question of what Moss's intent was on, on the 31st, on October 31st. And that's my objection. That's Moss's objection here to the supplemental instructions, that when they went to great extent to tell the jury that you have to find that the aid was somehow connected to the actual killing, that it left out the entire issue of intent and whether intent had to be related. His intent had to relate to that October 31st killing. And that's critical. Well, was it erroneous of the trial court to instruct the jury that Moss could have ended his responsibility for the crime by notifying, under the aiding and abetting instruction, by notifying Jenkins that he wanted to withdraw from that crime. He no longer bought into that crime. Is that wrong as a matter of law? Well. That he would have had, there had to be some evidence that he had told Jenkins, I'm out of it. That is the standard for withdrawal from a conspiracy. There was not really any evidence that he had met that legal standard for withdrawal from a conspiracy in that there was no evidence that he had ever communicated to any of the other conspirators. But the court also used that on the aiding and abetting. And I don't believe that is the correct standard because it's not a question of withdrawing. It is a question that at the time of the actual offense, there has to be both some aid in the actual offense and the intent, the specific intent. If you look back at California law, this is exactly what the Beeman case was all about. It's the instruction on aiding and abetting used to tell the jury before the Beeman decision, it used to tell the jury that he only had to assist with knowledge of the perpetrator's upcoming action. But the California Supreme Court held in Beeman is, no, that's not true. He has to have, there has to be a combination of act and intent, and he has to have the specific intent. Now, the instructions got changed, and the original instruction given to the jury during, before they commenced deliberations adequately told them, well, I shouldn't say adequately told them, it did tell them that he had to have, he both had to aid and have the specific intent. But what's clear is that those instructions did not clarify the matter sufficiently for the jury because the jury had a series of questions that went on over the course of almost a month about it where they were asking the same thing over and over again. Now, one of the things that I think ended up causing this confusion that only kind of occurred to me last night when I was reading through all the material again was that the jury's questions were framed in the wording they were asking was intent to aid, which actually comes out of the instruction, one of the instructions. Now, it's clear that the court and all four of the attorneys believed that what they were asking about was intent. But over the course of discussions that went on for a couple hundred pages going back and forth, everybody kind of lost sight of the intent and started focusing on the aid. And that's why I think what led the court to eventually instruct them only on the issue of aid. I would say, however, that when the court came up with the proposed instruction that it eventually gave, the objection by Moss's lawyer was exactly this, that it didn't tell them that they had to find that he had the intent to kill on October 31st. But the way the State court of appeal deals with that is it says that he, the court also correctly, kept referring the jury back to the original instruction, which had the intent in it. Well, okay. The court of appeal opinion in this matter on this issue is two paragraphs. And that's all it says, is that it is they got correct instructions to start with and that the finding on special circumstances showed that they found intent. Well, the finding on special circumstances only shows that they found intent at some point, not at the relevant point. But whether they found it or not under these instructions, it misses the whole point because the argument is they would have found it under the wrong instruction that you gave them. The issue about we gave them correct instructions to start with is no answer at all. What is interesting, if you look at both the United States Supreme Court cases, this Court's cases and the California cases, that there's a big difference between giving correct instructions to the jury and then the jury and the jury never indicating any problem. If someone argues on appeal, well, then the jury, the instructions were ambiguous and the jury might have done something with them. That's the context in which void, for example, comes up. There's a big difference, though, when the jury has indicated substantial confusion based on the instructions given. And there are cases that both from this Court, Powell, for example, which is cited in the briefing, and the United States Supreme Court, like Bolenbach, would say that it's no answer to just refer them to instructions they've already told you are — back to instructions that they've already told you are confusing. And so the California court of appeal opinion, which actually isn't even opinion on the Federal due process issue, but I'm not sure that matters too much, but it's wrong. It's just that it's inconsistent with what the law is if the jury is asking questions. If I were arguing it was an ambiguous jury instruction when the jury had indicated no confusion, that would be correct and it would be the answer. But what would have been the correct instruction for the correct supplemental instruction to clarify? Once the Court decided it was going to tell the jury that the aid had to specifically relate to the actual killing on October 31st, I think it was compelled to tell the jury that the intent had to be present on the 31st, too. Because the problem with pointing out that the aid, when the jury — when everybody recognized that what the jury was asking about was intent, the problem with pointing out aid implied that only the aid had to relate to October 31st, and that the intent did not have to relate to October 31st. And I think that's what's critical, because — and that, in fact, was — although the primary argument the defense counsel argued to the jury was that Moss was not involved in this murder or conspiracy at all, his kind of fallback position was that he was involved in it only to prevent his testimony and not to exact revenge for it. Was there an objection to the clarifying instruction that the Court gave? Oh, there were many and many suggestions for alternative instructions. The — it — about 200 pages, all of it's in the excerpt, where there was discussion among the four attorneys in the Court about what to do. When the instruction was finally given, was there an objection to that instruction? There was an objection that — I mean, not at the time it was given, but when the Court said, this is an instruction I'm giving, yes, there was an instruction — an objection. I'm sorry. All right. Thank you, counsel. Good morning, Your Honors. Deputy Attorney General Kyle Brody for the Respondent. The — one of the basic rules on appeal for any sort of instructional error claim is that we look at the instructions as a whole. And I think that's particularly important in a case like this, where you have a lot of evidence, a complicated fact pattern, a jury that wants clarification of the instructions. The trial could initially quite reasonably say, take another look, here is where this concept is contained, take a look at it. The jury continues to say, well, wait a minute, does he have to aid in a bet on the day of the killing? And, you know, in the trial court and the parties, I think they say, well, okay, we've got to proceed carefully here because, you know, everybody is on potentially thin ice here when we start straying into responding to jury's questions. And so after argument, lengthy argument, trying to answer the jury's questions fully, they do issue responses — or the trial court, I should say, issues a response which never has been alleged as inaccurate, but only incomplete. But it is a complete response because the jury does not ask about the intent question that is now being raised here in this Court. What the jury asks about is, did Petitioner Moss have to aid in a bet on October 31st, the day of the killing? And, you know, when I've reread the questions, and I've done it many times, I've done it many times in preparation for this argument, I'm struck by how similar they all are. It's the same question every time. I mean, shades of meaning, perhaps, but I think from the parties — Maybe it wasn't being answered. I'm sorry? Maybe it wasn't being answered. Well, you know, I don't know what we take from the jury's notes. You know, that could be one juror who is — just wants it reread. Perhaps the deliberative process is going on, and they say, well, I don't understand why you don't get this. Let's ask the judge again. It's really hard to know what to make of these notes at the end of the day as far as how much meaning they have and what — particularly what constitutional significance they should have, if any. I would submit that the inferences we can draw are very limited and that we really are all speculating, all of us, when we think what the jury must have been considering or must have been hung up on when it sent out the notes. The notes do not ask about intent. And they all — and I think that Petitioner's representation of them, I just — I disagree with it. They're very concerned. To the extent we can draw any inferences, they seem to be concerned with. If Moss didn't do anything, didn't even talk to these guys on the day of the killing, can he still be guilty of aiding and abetting the murder? And, of course, the short answer to that question is yes. He doesn't have to be there. But the trial court says, well, there are limits on that. And the limits are the aiding and abetting has to have some relationship to the crime that it's committed. They don't go into a discussion of intent because the jury doesn't ask about intent. And I think that's — I think just rereading what the questions are, and we don't have the text of most of the questions, but nevertheless, that's the record that I think — that's the inference that the record leads us toward. What about the fact that he's being killed for an entirely different reason? That Moss may have agreed and aided and abetted because he wanted to keep this person from testifying, but now he's testified. And you can see what's bothering the jury is the fact that this is an entirely different reason. And would he really have participated by giving the gun and whatever if revenge was the motive? Well, there's — I guess there's a couple responses to that question. And one, Judge Wardlaw made, the question that Your Honor asked was, you know, does a new conspiracy, a new plan, a new crime arise every time the subjective motivations of one of the conspirators shifts? And the answer is no. I have looked and looked, and I have not found a case where they — where any such holding is in any California case. What we do have is cases where there are multiple victims. And those are the cases cited by Petitioner in the opening and reply briefs. Multiple victims is a different — under California law, that has a different weight as far as how many crimes are occurring, how many conspiracies to murder, how many solicitations to commit murder, how many attempted murders. But we don't ultimately know what every reason was for these people to want this detective killed. Petitioner draws great significance from the fact that the jury found not true the special circumstance that Moss killed or aided and abetted the killing in retaliation for his testimony. And says, well, that tells us that the jury didn't think he was involved anymore. But the jury in the co-defendant's case, Mr. Jenkins, the actual killer, they also found the special circumstance not true as to Jenkins. Now, it's a different jury. And so I grant that the inferences we can draw from that are perhaps limited. But nevertheless, what it illustrates, I think, is it is not possible, really, to — and it's not, frankly, legally sound, to try and deduce what the jury's verdicts on one count or their special circumstance findings. Perhaps we have an inconsistent verdict. We don't know what we have. But what we do have is a jury that is instructed that if it has to find any special circumstance true, as they did here, they have to find that Moss intended that a person be killed. So they resolved the intent question. They said, okay, yeah, he intended that the detective die. The Petitioner finds that, well, you know, this — the act of testifying by the detective somehow bifurcates this into two different conspiracies. But it's not. It's one crime. It's a crime to kill the detective. The California Court of Appeal summarized the motive as the detective was killed by the Petitioner, was a witness against Jenkins, and for this reason, Jenkins wanted the detective killed. Now, you know, almost 20 years later, we can look back and say, well, maybe the testimony changed things. Maybe they really weren't thinking about — now that the testimony happened, everyone said, well, I don't want to be a part of this anymore. But, you know, the criminal law doesn't work that way. If you set a plan in motion to kill somebody and you are an active participant and you are providing a weapon and you are recruiting people into the plan, it's not enough under California law to just say, oh, you know, I don't particularly care anymore if that happens. You have aided and abetted the murder with the intent that the murder be carried out. And so by doing that, Moss's guilt is complete at that point. If you can withdraw from a conspiracy. That's correct. Can you withdraw from aiding and abetting? You know, I wondered that at some point. And, you know, I was going through hypotheticals in preparing for the argument. I thought, well, if you aid and abet a crime, then you think better of it and you think, oh, wait, I don't want it to happen and what do you do? And I'm not aware of any case law on the point, frankly. Perhaps because it doesn't happen much, regrettably. But be that as it may, I would imagine that the theory would be something like withdrawal from a conspiracy and, you know, you have to take some affirmative steps to prevent the crime from happening. And certainly the discussion between the parties in the trial kind of embodies that same notion. And the prosecutor, by the way, objects to any instructions on withdrawal because the prosecutor says he didn't withdraw from anything. There's no evidence that he's intent somehow evaporated or that he didn't want the crime to go through. So, you know, the prosecution objects to that, saying the jury shouldn't even be allowed to find this. It's unsupported. But nevertheless, the instruction is given. So, you know, in aiding and abetting, can he withdraw from that? I guess the real frank answer is I don't know because I don't think that question's been answered in California. I do know, and of course bringing it back to this case, that even if he could, he didn't. So, you know, I guess that's the short answer to Your Honor's question. I do think that when we look at the instructions as a whole, it really is important to note that the jury does have that intent requirement in front of them, and they do not express confusion about it. The trial court really impressively, I think, tries to give full responses, and there's a lot of asides in the various arguments among the parties, where various people say, look, we have to be careful not to try and read too much into their question because we don't want to intrude on their deliberative process. And so everyone, I think, agrees that the questions need to be carefully crafted, narrowly tailored to be responsive but not editorializing, and that's a delicate balance to strike. And I think the trial court hit it exactly right here by responding to the questions that are asked. I have two peripheral questions, more of curiosity, I guess. Jenkins was convicted, obviously, first, right? I think his verdict came in first. Yes, I think that's true. Petitioner's counsel would probably have a better idea of that. What I'm wondering is why is he running around loose if he was convicted? Jenkins? You mean convicted of the murder or of the robbery? Yeah. It was a separate trial, wasn't it? No, it was the same. They were tried jointly. Oh. They were tried jointly but two jurors. So this was just brought after the guy testified, but still the jury hadn't come in on Jenkins. If I understand your question right, there's the robbery trial in 1985. Yeah. And Jenkins is the only guy on trial for that. And I don't think Jenkins had been convicted at the time of the murder. Okay. He's running around. I guess he posted bail or something. All right. So that's why he's running around loose. The second peripheral question is it's an awfully long time for the trial. Was that an unusual situation? It was months. In terms of the length of the trial and the evidence presented. Oh, it's colossally huge. The record is something like 25,000 pages. Yeah. It seemed like it's kind of a simple issue. Oh, well, I think, you know, as is not uncommon on the appellate review process, it's sort of become simpler, I think, now. I think that the attorney handling Jenkins' death case in the State court and in Federal court as well would probably, I am sure, he has a much more complicated bit of litigation in front of him than Moss does. So Jenkins, as I'm trying, I've been curious about some of this stuff, too. Jenkins and Moss were tried in the same trial but with two different juries. That's right. Together. Okay. Were any of the other people in the group that conspired, that were involved in that conspiracy, tried as well? They were tried subsequently. They were not tried as part of petition. Jenkins got the death sentence. He did. And Moss got, what was his sentence? Life without parole. Life without parole. If you have a special circumstance murder, that's the, those are your two options, life without parole or death. And I. Just as an observation on Judge Hugg's question, there have been a case or two in Idaho where they've used two juries. And my observation was it takes a long time to try the same case when you have more than one jury and panel. Yeah. I think you're right. I mean, it does complicate matters because, I mean, there are benefits to it, I suppose, in that a lot of the testimony will be heard by both juries. But just logistically trying to navigate, well, this is coming in against Defendant 1 but not Defendant 2, but wait, this part comes in against both of them, it has to be an administrative nightmare. But, you know, such is the law sometimes. And the jury was out in this case for a month, right? Just shy of that, but about a month, yes. And, you know, it's a long time, but it's a lot of evidence. I mean, it's not, it's no small matter, I think, to sort through that. I would be, I don't have any relevance to this claim, but I think it would concern us all if they came back in a couple of days and said, yeah, we know we had months and months of testimony, but we've got it figured out. So, you know, they're going through the instructions, paying attention to the evidence and trying to make sense of concepts which are probably counterintuitive coming in. Kennedy. Asking questions. Asking questions, getting accurate responses to those questions, and continuing to try and sort out what the facts are and how the questions of guilt are resolved. It's exactly what we want juries to do. And just, you know, I'll say this again. It's exactly what we want trial courts to do, which is to be conscientious in helping the jury make the assessment by applying the right standards. It's what the judge does here. It doesn't just wave them away and say, you've had instructions on this. I don't want to be bothered. And we've all seen that on appeal, where judges act like that, like, well, I don't want to be bothered. It's not what happens here. You have a trial court doing the right thing, giving accurate and complete responses. I thought she did a good job. I thought so, too, in a very difficult and delicate situation. So. Both Moss and Jenkins were obviously on bail, right, during the crime? Moss was not a defendant for the robbery that the detective was a witness at. He was he wasn't – I don't think he was involved with that robbery. So Moss was just, you know, Jenkins' friend. But Jenkins was on bail at the time. I assume bail or – I guess he could have been on his own recognizance. I frankly don't know. Nothing further. Thank you, Your Honor. Thank you. I think you were over, but I'll give you one minute. In fact, you were over. The other four conspirators who were charged were tried separately. The prosecution made a decision to team Moss with Jenkins. They have the strongest evidence on Jenkins, the weakest evidence on Moss, because all of it comes from accomplices. The other four, including Moody, who was no doubt the one who was present with Jenkins at the time the detective was killed, especially since he confessed to that, were tried separately. Two of them were acquitted. Moody was – they hung on Moody, and the prosecution dismissed the charges as to him. Only one other was convicted, and he got a straight life sentence. So Moss, probably the least involved of any of them, if actually involved at all, got the second-highest sentence out of this. I would just point out that the standard for all of this is not that we have to be certain of anything. It's reasonable likelihood. And while the state may talk about it being only one juror, that was enough. If it was only one juror who had this problem. And those questions were repeated. They came over the course of a month. They kept indicating that the instructions they got were not answering their questions. And that's the Court decision. All right. Thank you very much. We will adjourn this session of court for the day.
judges: Hug, T.G. Nelson, Wardlaw